IN THE MATTER OF G.L.C.P.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-293-CV

IN THE MATTER OF 

G.L.C.P. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant G.L.C.P. appeals his adjudication of delinquency and commitment to the Texas Youth Commission (“TYC”). 
 
In two issues, appellant
 
contends the evidence is legally insufficient to support the juvenile court’s determination that he engaged in delinquent conduct and that the juvenile court erred by committing him to the TYC.

II. Background Facts

On June 17, 2006, appellant, who was then a sixteen-year-old, was walking around Parks Mall in Arlington, Texas.  Parks Mall Public Safety Officer Isaac Gerami and Officer Keith Humphrey, an off-duty officer with the Arlington Police Department who was providing extra security for the mall, approached appellant because he was not wearing shoes while inside the mall.  Officer Gerami had heard that appellant’s shoes were recently stolen, and Officer Humphrey had heard that appellant was trying to recruit people to engage in a fight once the mall closed.

After determining that appellant was uncooperative and was giving misleading information about why he was not wearing shoes and about who was picking him up from the mall, Officer Gerami gave appellant a written trespass warning, which appellant signed, banning him from the mall property for one year.  The warning stated that appellant was banned from the “Parks at Arlington, including its parking lots and all property outlined on an attached map.”  There was disputed testimony regarding whether the officers gave appellant a written map of the property.  Officer Gerami testified that he gave appellant a map of the property when he gave him the written warning.   However, Officer Humphrey stated that there was no map attached to the written warning.  In any event, Officer Humphrey testified that the officers showed appellant where he was prohibited from going several times on either the map in the mall security office or on the map in the office of the police substation inside the mall.  Further, Officer T.L. McEowen walked appellant off the mall property after giving him a verbal warning and explained that the ring road of the mall marked the boundary that appellant could not cross for one year. 

Less than an hour after the officers gave appellant the trespass warning, they saw him back at the mall; this time, appellant was a passenger in a vehicle near the skating rink entrance, which was a “couple of feet” from where appellant had received the trespass warning.  Appellant told the officers that he had returned to pick up his brother. 

Officer McEowen arrested appellant on charges of criminal trespass.  At the disposition hearing on appellant’s delinquency, the State introduced evidence regarding appellant’s social history, three previous adjudications, failure to complete several Tarrant County Advocate Program (“TCAP”) terms and monitoring programs, and referrals to the juvenile court for violating prior probation orders.
(footnote: 2)  Consequently, the juvenile court entered a judgment of delinquency and committed appellant to the TYC. 

III.  Appellant’s First Issue

In his first issue, appellant contends that the evidence is legally insufficient to support the juvenile court’s determination that he engaged in delinquent conduct.  More specifically, appellant argues that the evidence is legally insufficient to establish his culpable mental state and that he received notice of where he was prohibited from entering. 

A. Standard of Review

In the adjudication phase of a juvenile case, the criminal legal sufficiency standard of review is employed.  
In re J.D.P. 
, 85 S.W.3d 420, 422-23
 (Tex. App.—Fort Worth 2002, no pet.); 
In re G.A.T.
, 16 S.W.3d 818, 828 (Tex. App.—Houston [14th
 Dist.] 2000, pet. denied). 
 In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the judgment
 in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the judgment.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B. Applicable Law

The elements of criminal trespass are (1) a person (2) without effective consent (3) enters the property of another (4) knowingly or intentionally and (5) when he had notice that entry was forbidden. 
 Tex. Penal Code Ann.
 § 30.05(a) (Vernon Supp. 2006); 
In re J.M.R.
, 149 S.W.3d 289, 294 (Tex. App.—Austin 2004, no pet.); 
see
 
West v. State
, 567 S.W.2d 515, 516 (Tex. Crim. App. [Panel Op.] 1978) (holding that when the statute governing criminal trespass does not prescribe a culpable mental state, a culpable mental state of intentionally or knowingly is used). 

C. Analysis

Appellant first asserts that the evidence at the adjudication hearing did not show that he intentionally or knowingly trespassed.  We disagree. 

Appellant returned to the mall less than an hour after he had received the trespass warning and was escorted off the property.  Although appellant was the passenger in the vehicle, he had been warned by three officers not to enter within the ring road that marked the perimeter of the mall property.  Appellant asserts that he never set foot upon the mall property and was merely a backseat passenger who had no control over the car’s movement.  
However, when the officers apprehended him, appellant claimed that he had returned to the mall to pick up his brother.  The juvenile court could have inferred from this statement that appellant voluntarily re-entered the mall.  

Regardless
, appellant’s mere presence at the mall after being told not to re-enter constituted trespass.  
See
 
Dunn v. State
, 979 S.W.2d 403, 408 (Tex. App.—Amarillo 1998, pet. ref’d) (holding that appellant’s mere presence on the property, given the statutory notice requirements, constituted a trespass)
.  Additionally, Officer McEowen testified that he told appellant that other people could not bring him back onto the mall’s property. 

Appellant next contends that the State failed to prove that he had notice that entry onto the mall’s property was forbidden.  Specifically, appellant argues that the notice given to him was contradictory and did not clarify what actions were prohibited.  Appellant asserts that the written warning stated there was an attached map, but no map was entered into evidence at the adjudication hearing.  Further, notes appellant, Officer Gerami testified that he gave appellant a map of the property, but could not be sure if appellant retained the map.

However, Officer Humphrey testified that when he gave appellant the trespass warning, he showed appellant prohibited areas on either the map in the mall security office or on the map in the office of the police substation located within the mall.  Also, the text of the written warning states that the mall’s parking lots are included within the areas to which entry was prohibited.  The record reflects that the officers repeatedly told appellant that he was not allowed to come within the ring road that marked the outer boundary of the mall’s property.  Officer Humphrey pointed to a map several times in explaining to appellant the boundaries which marked the area from which appellant was prohibited, and Officer McEowen, who actually walked appellant off the property, testified that he made certain that appellant understood he was not allowed to return within the ring road.  Despite all of these warnings, appellant reentered the mall’s parking lot to allegedly retrieve his brother and was apprehended only a “couple of feet” from where he was first warned.

After considering the evidence in the light most favorable to the judgment, we conclude that the evidence was legally sufficient to establish that appellant intentionally or knowingly trespassed after receiving notice of where he was prohibited from entering.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693
.  Accordingly, we overrule appellant’s first issue.

IV. Appellant’s Second Issue

In his second issue, appellant contends that the juvenile court erred in determining that commitment to TYC was warranted.  Specifically, appellant asserts that he was not a serious juvenile offender.  We disagree.

A. Applicable Law

The juvenile court has broad discretion to determine the proper disposition of a juvenile who has been adjudicated.  
In re K.J.N.
, 103 S.W.3d 465, 465-66 (Tex. App.—San Antonio 2003, no pet.); 
In re J.D.P.
, 85 S.W.3d 420, 426
 (Tex. App.—Fort Worth 2002, no pet.) Absent an abuse of discretion, a reviewing court will not disturb the juvenile court’s determination.  
In re K.J.N., 
103 S.W.3d at 465-66; 
In re J.D.P., 
85 S.W.3d at 426.
  
An abuse of discretion occurs when the juvenile court acts unreasonably or arbitrarily without reference to any guiding rules and principles.  
In re K.J.N., 
103 S.W.3d at 466
; In re T.K.E.
, 5 S.W.3d 782, 784 (Tex. App.—San Antonio 1999, no pet.).

If a juvenile is adjudicated to have engaged in misdemeanor delinquent conduct and disposition is required, a court may commit the juvenile to TYC without a determinative sentence if the juvenile has been adjudicated delinquent twice previously, the conduct that was the basis of one adjudication occurred after the date of another previous adjudication, and the conduct for which the juvenile is currently being adjudicated occurred after the date of at least two of the previous adjudications. 
 Tex. Fam.
 
Code  
§ 54.04(s) (Vernon Supp. 2006); 
In re A.I.
, 82 S.W.3d 377, 380 (Tex. App.—Austin 2002, pet. denied). 

B. Analysis

The record shows that appellant had three prior adjudications for misdemeanor offenses.  Appellant was first adjudicated delinquent for misdemeanor evading arrest on April 8, 2005.  He received probation for this offense.  On June 10, 2005, appellant tested positive for marijuana use, but tested negative in subsequent tests.  On August 11, 2005, appellant was referred to the juvenile court for violating probation by failing to report. 

Appellant was adjudicated delinquent again on October 6, 2005 for evading arrest.  Subsequently, the juvenile court gave appellant a second chance for probation and participation in TCAP.  However, appellant was adjudicated delinquent a third time on November 22, 2005 for failing to identify himself to a police officer, upon which he was given a third chance to complete probation.  After the third delinquency adjudication, appellant was referred three times for violating probation terms.
(footnote: 3)
 Thus, at the time of the disposition hearing on his criminal trespass offense, appellant had been adjudicated delinquent three times previously and was on probation.  Further, appellant’s adjudication for the criminal trespass on July 25, 2006 was after his three previous adjudications. 

Appellant contends that the juvenile court abused its discretion by committing him to TYC because it did not consider alternative placement, community based programs, stabilization of appellant’s home life, or that the criminal infractions were “trivial.”  However, this is not the test for determining whether the juvenile court acted arbitrarily.  To avoid abusing its discretion in determining whether a juvenile should be committed, a juvenile court must consider whether it is in the child’s best interest to be placed outside the home, whether reasonable efforts have been taken to prevent or eliminate the need for the child’s removal from home, and whether while in the home, the child cannot receive the quality of care and level of support and supervision needed to meet the conditions of probation.
  
Tex. Fam. Code Ann.
 § 54.04(i);
 In re K.J.N.
, 103 S.W.3d at 466; 
In re T.K.E.
, 5 S.W.3d at 784. 

At the disposition hearing, appellant’s probation officer, Greg Lemear, testified that aside from regular probation, appellant had been placed in the TCAP program, but was discharged for failing to participate.  Appellant was also placed on Intensive Supervision Probation (“ISP”) after his second adjudication and was still on ISP during the criminal trespass adjudication because “his behavior has not been such to warrant taking him off.”
(footnote: 4)  Appellant was also unable to complete four out of six monitoring programs in the year prior to his most recent offense.

While in detention for the current offense, appellant got along with peers but was “very argumentative” and defiant towards the staff.  Lemear stated that his greatest concern was appellant’s lack of supervision once released.  Lemear testified that appellant was most stable when he was with his aunt.  However, according to appellant’s mother, the aunt no longer has contact with appellant.  Appellant’s mother, Valerie “Zapple” Pickins, testified that she worked nights and would prefer that appellant live with his grandmother.  However, appellant was living with his grandmother at the time he committed the criminal trespass offense.

Because of appellant’s prior adjudications, commitment to TYC was an available disposition under family code section 54.04(s).  
Tex. Fam. Code Ann.
 § 54.04(d)(2), (s).  Further, the record shows that prior attempts to keep appellant at home and in monitoring programs had failed and that it serves appellant’s best interest to be placed outside the home.  Therefore, the juvenile court did not abuse its discretion by committing appellant to TYC.  
See 
Tex. Fam. Code Ann.
 § 54.04(i); 
In re K.J.N.
, 103 S.W.3d at 466; 
In re T.K.E.
, 5 S.W.3d at 784. Accordingly, we overrule appellant’s second issue.

V. Conclusion

Having overruled appellant’s two issues, we affirm the juvenile court’s judgment finding appellant delinquent and committing him to the TYC.

 

PER CURIAM

PANEL F: LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: May 10, 2007

FOOTNOTES
1:
See
 
Tex. R. App
. P. 47.4.

2:
TCAP is a home-based program which utilizes paid, trained adults (advocates)
 who live in the same communities as the youth to develop relationships with at-risk youth and families.
  

3:
For the first adjudication, appellant received one year of probation, which ran from April 8, 2005 until April 8, 2006.  According to the record, he received a year of probation starting on October 6, 2005 for the second adjudication and six months’ probation starting on November 22, 2005 for the third adjudication.  It is unclear from the record if appellant was serving the second or third probation terms, or both concurrently, when he committed the trespass offense.

4:
ISP provides intensive intervention and rehabilitative programming to prevent incarceration.  The program involves high-frequency face-to-face contacts ranging from daily to twice weekly.